TEXAS COURT OF CRIMINAL APPEALS
Attn: Abel Acosta, Clerk
P.O. Box 12308, Capitol Station
Austin, Texas 78711

15 July, 2015

RE: Ex Parte Eli Vernon - Appeal # WR-83,503-01
    Objections to Trial Judge's Conclusions and Recommendations

Dear Mr. Abel Acosta,

Enclosed, please find a copy of the Petitioner's Objections to Trial Judge's Recommendations to Deny the Applicant's Application for Writ of Habeas Corpus.

Please file this document and present it to the Court for review with his Writ. Note: The Respondent failed to serve the Applicant with a copy of their Response, and the Applicant did not receive the Trial Court's Recommendations until 29 June, 2015.

Thank you for your valuable time, patience, and assistance in this matter. It is greatly appreciated

Sincerely Yours,

Eli Vernon
Eli Vernon III, #1863499
Mac Stringfellow Unit
1200 FM 655
Rosharon, Tx 77583

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 23 2015

Abel Acosta, Clerk

Cause No.  WR-83,503-01

**IN THE**

**COURT OF CRIMINAL APPEALS**

**OF TEXAS**

---

**TRIAL CAUSE NO.  CR13-0053**

| | |
|---|---|
| EX PARTE | § |
| | §  IN THE 43rd |
| ELI VERNON III | §  JUDICIAL DISTRICT COURT |
| | §  OF PARKER COUNTY, TEXAS |
| a.k.a. ELI MIMS | § |

---

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 23 2015

Abel Acosta, Clerk

---

**OBJECTIONS TO TRIAL COURTS ORDER RECOMMENDING**

**THAT APPLICANT'S APPLICATION FOR WRIT OF**

**HABEAS CORPUS BE DENIED**

---

ELI VERNON III, #1863499

ALFRED STRINGFELLOW UNIT

1200 F.M. 655

ROSHARON, TEXAS 77583

| REFERENCE | TABLE OF AUTHORITIES | PAGE # |
| --- | --- | --- |

**FEDERAL STATUTES**

28 U.S.C. § 1746........................................................ 12

28 U.S.C. § 2254(d)(1),(2)......................................... 6,7

**SUPREME COURT REPORTER**

DUREN v. MISSOURI, 99 S.Ct. 664 (1979)......................... 4

GATES v. ILLINOIS, 103 S.Ct. 2317 (1983)....................... 5

HUGHES v. ROWE, 101 S.Ct. 173 (1988)........................... 1

STRICKLAND v. WASHINGTON, 104 S.Ct. 2052 (1984).......... 10,11

**FEDERAL REPORTER**

CRANE v. JOHNSON, 178 F.3d 309 (5th CIR 1999)................ 11

MURPHY v. DRETKE, 416 F.3d 427 (5th CIR 2005)............... 6

TREMBLEY v. ANDERSON, 584 F.2d 507 (5th CIR 1999)......... 11

WIGGINS v. PROCUNIER, 753 F.2d 1318 (5th CIR 1985)........ 1

**FEDERAL SUPPLEMENT**

TREMBLEY v. ANDERSON, 439 F.SUPP. 1250 (1970)............. 11

**TEXAS STATUTES**

CODE OF CRIMINAL PROCEDURES, ARTICLE 11.04.................. 1

CODE OF CRIMINAL PROCEDURES, ARTICLE 38.23(a),(b)......... 7,9,10

TEXAS PENAL CODE § 38.04(a)...................................... 3

**SOUTHWESTERN REPORTER**

CADOREE v. STATE, 331 S.W.3d 514 (TX.APP. [14 DIST] 2011)..... 8

COLESTON v. STATE, 511 S.W.2d 10 (TX.CRIM.APP. 1974).......... 5

DAVIS v. STATE, 989 S.W.2d 859 (TX.APP-AUSTIN 1999)........... 5

DILLON v. STATE, 79 3 S.W.2d 744 (TX.APP-SAN ANTONIO 1990).... 4

DOWLER v. STATE, 44 S.W.3d 666 (TX.APP-AUSTIN 2001)........... 5

EX PARTE YBARRA, 629 S.W.2d 943 (TX.CRIM.APP. 1982)........... 10

PARISH v. STATE, 939 S.W.2d 201 (TX.APP.-AUSTIN 1997)........ 5

**REFERENCE**                    **TABLE OF AUTHORITIES**                    **PAGE #**

**CONT. SOUTHWESTERN REPORTER**

ROJAS v. STATE, 797 S.W.2d 41 (TX.CRIM.APP. 1990).............. 5

ST. GEORGE v. STATE, 197 S.W.3d 806 (TX.APP. [2 DIST] 2006)..... 8

ST. GEORGE v. STATE, 237 S.W.3d 720 (TX.APP. [2 DIST] 2006)..... 8

SWOPE v. STATE, 805 S.W.2d 442 (TX.CRIM.APP. 1991).............. 4

WRIGHT v. STATE, 932 S.W.2d 572 (TX.APP-TYLER 1995)............. 5

Cause No. WR-83,503-01

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

TRIAL CAUSE NO. CR-13-0053

EX PARTE                          §
                                  §   IN THE 43rd
ELI VERNON III                    §
                                  §   JUDICIAL DISTRICT COURT
a.k.a. ELI MIMS                   §   OF PARKER COUNTY, TEXAS
                                  §

---

### OBJECTIONS TO TRIAL COURTS ORDER RECOMMENDING THAT APPLICANT'S APPLICATION FOR WRIT OF HABEAS CORPUS BE DENIED

TO THE HONORABLE JUDGE(S) OF SAID COURT:

COMES NOW, Eli Vernon III, a.k.a. Eli Mims, Applicant, pro-se, in the above styled and numbered cause, and respectfully files this Applicant's Objections To Trial Court's Order Recommending That Applicant's Application For Writ Of Habeas Corpus be Denied. The Applicant would show the Honorable Court the following in support thereof:

### NOTICE

The Applicant prays the Honorable Court not hold him to the same stringent standards, as a licensed attorney, as the Applicant has no skills or training in the science of law, pursuant to **Wiggins v. Procunier,** 753 F.2d 1318 (5th Cir. 1985), and **Hughes v. Rowe,** 101 S.Ct. 173 (1988).

1. The Applicant would show the Honorable Court that in making its recommendations, the Trial Court Judge failed to give the Applicant the due regard to his writ as required by Article 11.04 V.A.C.C.P. This is easily seen by the fact that the State filed their State's Reply to Applicant's Application for writ of Habeas Corpus on 18 June 2015 at 4:56 p.m., without serving

-1-

Applicant any copy, and the Trial Judge filed his Recommendation to deny it on 19 June, 2015, at 2:46 p.m., when filed with the District Clerk. And the Applicant received it (6) six days later on 26 June, 2015. Where was the investigation on the issues claimed? This Trial Judge has shown bias throughout the trial, and has now shown it in his appellate review. The Applicant prays the Honorable Court disregard the Trial Court's recommendations, and hold its own evidentiary hearing or order seperate District Court to hear this appeal.

2. ISSUE ONE - Denial of due process and equal protection when Applicant was denied a jury of his peers due to no African Americans being present on the Voir Dire panel.

In the State's Reply to Applicant's Application for Writ of Habeas Corpus, on pages 4-6, the State submits to the Court that some 200 citizens are summoned for jury duty. They also admit out of 200, only 53 showed up for jury duty. They admit, on page 5, that this "is about average for our jury weeks" and that "this Court [the trial court] is fully aware" of this problem. Yet neither the Court, nor the State, have taken any measures to correct the evidently ongoing problem. Had the 200 jurors showed up, the likelihood of at least one black, or more Hispanic or an Asian citizen being on the panel would have increased four times. If the State creates a system by which the Jury is selected, but fails to ensure that system's integrity is maintained, they deny defendants in jury trials due process and equal protection under the law. In fact the State readily admits on page five of their "Reply" that "it would not be unusual for no African-Americans citizens to appear on any randomly - generated list of only 200 potential jurors out of a total county population of over 120,000 people." By failing to properly ensure the 200 selected show up or are replaced, the State guarantees the

-2-

the odds are substantially lessened.

Under **Duren v. Missouri**, 99 S.Ct. 664, 668, the Applicant has shown: 1) that African-Americans are a "distinctive" group in the community; 2) that (due to the State's failure to maintain the 200 citizen jury pool) that the representation of this group in which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. By the State already acknowledging the fact the failure of selected jurors (almost 150 out of 200) to appear is normal, and not showing any remedial actions to correct the ongoing problem, the State and the trial court systematically deny all defendants the right to a jury of their peers selected out of the legally procured 200 member jury pool as the county jury selection laws mandate. Thus, the Applicant has been denied a proper jury selection process, which did in fact greatly reduce the chances any member of his race would appear on the Voir Dire Panel.

3. ISSUE TWO: The Applicant states that his due process rights were violated by the State's failure to give "mens rea" when listing the charge on the indictment and/or charging instrument. Such held the State to a lesser burden of proof than was required by law.

The Applicant's sole alibi defense was that he did not know the vehicle behind him was a police officer. This would require the State to prove that the Applicant's fleeing was from a culpable mental knowledge that he was in fact fleeing from someone he knew was a police officer.

The State argues that the Penal Code § 38.04(a) provides "a person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." (State's Reply, pg. 10).

The State told the Jury "we don't have to prove why the defendant fled from a person he knew to be a police officer." (RR Vol. 3, pg. 20, lns. 9-10). But the whole issue of "knowingly" and intentionally fleeing is seen in a different perspective if the motive for the Applicant fleeing was that he did not know it was a police officer chasing him. And this was in fact shown at trial when officer Cryer stated that when the Applicant saw police outside his overturned vehicle he stated, "Didn't know it was you," (R.R. Vol. 3, pg. 61, lns. 17-19). Thus the State was required to disprove the Applicant's alibi defense. By taking the culpable mental state out of the charge, the State was no longer required to show why the Applicant Fled. Just that he fled intentionally. And the Courts have already stated, "If an indictment fails to allege a culpable mental state for an offense, it is defective and is subject to motion to quash." <u>Swope v. State</u>, 805 S.W.2d 442, 444 (Tex.Crim.App. 1991). "Proof of culpable mental state generally relies upon circumstantial evidence." <u>Dillo v. State</u>, 793 S.W.2d 744, 748 (Tx. App.-San Antonio 1990, no pet.).

The Applicant's due process rights were denied because the State was not required to bear their full burden of proof.

**4.** ISSUE THREE: Applicant contends police officer did not have reasonable suspicion to stop the Applicant due to failure to show the level of suspicion required to justify detaining the Applicant. As can be seen by the lengthy discussion between the trial judge, defense counsel, and prosecutor, Texas caselaw supports the Applicant's contentions. This was also shown by the trial judge's own statement "this is a very narrow case."

An anonymous caller called in that he believed a crime had been committed. The dispatcher relayed false information to officers. Officer Cryer testified he pulled up behind the Applicant in a car not normally used due to lack

-4-

of strobe lights on the roof. He had his dashboard strobe lights on before he pulled up behind Applicant. Pursuant to **Dowler v. State**, 44 S.W.3d 666, 667 (Tex.App.-Austin 2001) it was not enough information to justify the level of suspicion required to justify a detention. Because the information given to police were easily obtainable, i.e. a black man driving a black Chevrolet Impala headed down highway 20, at the time the information was provided, it did not support a finding or reasonable suspicion that the Applicant had committed a crime. (See **Parish v. State**, 939 S.W.2d 201, 203 (Tex.App.-Austin 1997).

"To justify a police officer's conclusion that a crime has been or is being committed, the officer generally cannot rely alone on a police broadcast of an anonymous phone call to establish probable cause or reasonable suspicion." **Wright v. State**, 932 S.W.2d 572, 576 (Tex.App.-Tyler 1995); **Rojas v. State**, 797 S.W.2d 41, 44 (Tex.Crim.App. 1990); **Coleston v. State**, 511 S.W.2d 10, 12 (Tex.Crim.App. 1974); **Davis v. State**, 989 S.W.2d 859, 863 (Tex.App.-Austin 1999).

But this is exactly what occurred in the case at bar. And then the call from the dispatcher failed to relay correct data to the officers. As stated in **Gates v. Illinois**, 103 S.Ct. 2317 (1983).

"The opinion in Gates recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity in as much as ordinary citizens generally do not provide extensive recitations of the basis of the everyday observations, and given the veracity of persons supplying anonymous tips is 'by hypothesis largely unknown, and unreliable." Id at 2332. "The call provided virtually nothing from which one might conclude that [the caller] is either honest or his information reliable." Id at 2326.

Because officers did not have reliable information, they had no reasonable

-5-

suspicion to detain the Applicant. In fact, even when all evidence was presented, there was no stolen credit card as alleged; there was no stolen jewelry and all the jewelry had invoices showing they were the property of the Applicant. The sole reason the Applicant was even charged of a crime was because he ran from the police. But why would he have cause to run, when no crime had been committed? Testimony revealed Officer Cryer was in a vehicle that Applicant recognized as the same make, model, and color as the vehicle driven by robbers who had robbed him on a prior occasion. Until the Applicant fled, police had no reasonable cause to detain him, or even have strobe lights on in the first place. The detention was illegal by law, and as such this conviction should be reversed and an acquittal granted.

5. ISSUE FOUR: The Applicant argues that the Trial Court erred in its failure to grant the Motion for Directed Verdict based on fact police officers did not have enough reliable information to form reasonable suspicion required to justify the detention.

The Applicant argues that the trial judge made a decision that only the Jury should have made - was the detention legal. Without the Jury's decision on this issue, the directed verdict was ministerial.

The State argues that this issue was already decided in direct appeal, and as such was not appealable issue. However, "Under AEDPA, this Court may not grant relief on a claim the state court has adjudicated on the merits 'unless the adjudication of the claim...resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States,...or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding'." 28 U.S.C. § 2254(d)(1) and (2); **Murphy v. Dretke**, 416 F.3d 422, 432 (5th

Cir 2005).

In the Opinion of the Eleventh Court of Appeals, dtd. September 25, 2014, the Honorable Justice Mike Wilson states on pages 3-4, "Officer Cryer testified that, on November 14, 2012, he was notified by dispatch that the driver of a black Chevrolet Malibu, later confirmed to be Appellant, was reportedly in possession of stolen jewelry and/or a stolen credit card. Officer Cryer then headed to Appellant's location in his marked patrol car. Officer Cryer eventually caught up to Appellant's vehicle and turned on his lights and siren." (Opinion, pags. 3-4).

In trial transcripts it was determined Applicant was driving a black Chevrolet Impala. It was also testified that Officer Cryer had his strobe lights on even before he found the Applicant. It was also testified the police car had no visible markings on front of the police car, and no strobe lights on the roof. (R.R. Vol. 3, pgs 136-138; 145-146).

Thus, as required by 28 U.S.C. § 2254, the Appellant Judge's opinion was based on an "unreasonable determination of the facts in light of the evidence presented in State Court proceedings." The officer had initiated his detention of the Applicant even before he found him. And even then, the car description was incorrect, the report that the Applicant attempted to sell a "stolen credit card" was wrong information, and the call was anonymous. All make for lack of reasonable suspicion as required by both State and Federal law. Thus, the Applicant is entitled to bring this claim before this Honorable Court. This conviction should be reversed, and either an acquittal or new trial granted.

**6.** ISSUE FIVE: The Applicant argues that pursuant to Article 38.23(b), V.A.C.C.P., the Trial Judge had a duty to give Jury instruction on the issue of reasonable suspicion.

The State argues there was no "material" disputed issue of fact which required an instruction.

Pursuant to Cadoree v. State, 331 S.W.3d 514 (Tx.Cr.App.-14 Dist 2011), "There are three requirements that a defendant must meet before he is entitled to the submission of a jury instruction to disregard evidence: 1) the evidence heard by the jury must raise an issue of fact; 2) the evidence on that fact must be affirmatively contested, and 3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence; a cross examiner's questions do not create a conflict in the evidence, although the witness's answers to those questions might." Id.

The facts were that an anonymous caller [not known prior to this occassion by dispatcher or police], said a black man driving a black Chevrolet Malibu, [the Applicant drove a black Chevrolet Impala], tried to sell him stolen jewelry, [dispatcher radioed police it was a stolen credit card. Nothing stolen was found]. The fact is Officer Cryer took off in his patrol car with his strobe lights on, even before he found the Applicant driving a black Chevrolet Impala. The issue of fact - where was the reasonable suspicion that a crime was, or had been committed? This issue was contested at trial by defense counsel during the request for a directed verdict hearing. And finally, this factual issue is material to the lawfulness of the detention started by Officer Cryer. And under the "fruit of poisoness tree doctrine", evidence found after the initiation of the detention may not be used against the Applicant. (See St. George v. State, 197 S.W.3d 806, p.d.r. granted, 237 S.W.3d 720 (Tx.Cr.App. 2 Dist. 2006).

Article 38.23(b) V.A.C.C.P. directs the Trial Judge to give Jury instruction if there has been raised the legal issue of reasonable suspicion. The Applicant was denied due process when the Trial Judge took upon himself the

-8-

duty of Juror. The Applicant requested Jury Trial. This conviction should be reversed and Applicant granted an acquittal or a new trial.

7. ISSUE SIX: The Applicant argues that defense counsel was ineffective for his failure to: 1) challenge the composition of the Jury; 2) have jury charge/indictment corrected; 3) request Jury instructions pursuant to Article 38.23(a) V.A.C.C.P. in regards to whether police had reasonable suspicion to stop the Applicant; 4) failure to Object to incorrect Jury instruction in closing arguments of guilt/innocence phase of trial and during Voir Dire. These derelictions on the part of defense counsel denied Applicant his 5th, 6th, and14th Amendment right to effective assistance of counsel. Note, the Trial Court conducted no investigation on this issue denying Applicant a proper review of this issue. The defense counsel has not been given opportunity to respond.

The first issue of failing to challenge the Jury composition shows ineffectiveness, or for a better word, relinquishing the Applicant's right to a Jury of his peers. Defense counsel has merely conformed to ignoring Parker County's failure to ensure potential jurists show up for jury duty. The State's Reply to this issue, that only 53 out of 200 jurors showing up was normal. The failure of defense counsel to challenge this constitutional violation will continue unless effective counsels challenge it.

This was ineffectiveness in failing to protect the rights of his client.

The second issue of failing to have the Jury charge/indictment corrected cannot in any way be construed as sound trial strategy when it involves the Applicant's alibi defense. State and federal law require that "mens rea" or a culpable mental state be included in the indictment/jury charge. The issue of "knowingly" was not included in the charge. Such renders the indictment void. But more importantly, allowed the State a lesser burden of proof.

-9-

They were not required to "prove" that the Applicant did not know a police officer was chasing him, or that his belief it was robbers was a lie. Again, this cannot be said to be sound trial stratagy, as it was his client's sole line of defense.

**Strickland v. Washington**, 104 S.Ct. 2051, 2061 (1984) has stated, "if there is only one plausible line of defense, counsel must conduct a reasonable substantial investigation into that line of defense, since there can be no strategic choice that renders such an investigation necessary. The same duty exists if counsel relies at trial on only one plausible line of defense, although others are available. It must include an independant examination of the facts, circumstances, pleadings, and laws involved." Id. at 2061.

Defense counsel failed to hold the State to their burden of proof of every element of the crime charged, to include "mens rea", a culpable mental state.

3. Defense counsel had a duty to the Applicant to request Jury instructions pursuant to Article 38.23(a) V.A.C.C.P. He had argued the reasonable suspicion issue at trial. He allowed the Trial Judge to decide a crucial issue that should have been the Jury's decision alone.

"It is fundamental that an attorney must have a firm command of the facts of the case, as well as the law before he can render reasonably effective effective assistance." **Ex Parte Ybarra**, 629 S.W.2d 943 (Tx.Crim. App. 1982).

Defense counsel failed to render effective assistance when it was needed.

Finally, during the Voir Dire and in closing arguments of the guilt/innocence phase of trial, the prosecutor instructed the Jury that they were not required to prove why the Applicant fled from police. This lessened the burden of proof upon the State to prove culpable mental state. Yet there was no objections to this argument by the defense counsel.

"If an attorney makes a serious mistake which could effect the verdict,

-10-

reversal is required, even if the attorney was generally competent." **Trembley v. Anderson**, 439 F.Supp. 1250 (1970) affirmed, 584 F.2d 507 (5th Cir 1978).

The Applicant was required to show that defense counsel's performance was deficient, and that the deficiency prejudiced the defense. (See **Strickland** supra, at 2052; **Crane v. Johnson**, 178 F.3d 309, 312 (5th Cir. 1999). He has done this.

## CONCLUSION

The conviction and sentencing under which the Applicant is imprisoned is unlawful and void due to the multiple violations of the Applicant's rights to due process and equal protection under the law, effective assistance of counsel, and an unbiased appellate review. The Trial Judge has denied the Applicant this appellate review.

The Appellate prays the Honorable Court disregard the Trial Court's Order Recommending that Applicant's Application for writ of Habeas Corpus be Denied, and

1) Order an evidentiary hearing on all the Applicant's issues be heard in a different District Court; or

2) This Court hold its own evidentiary hearing on all the issues presented in the Applicant's Writ; or

3) Grant the Applicant an acquittal or new trial.

**IT IS SO PRAYED**

rESPECTFULLY sUBMITTED, _Eli Vernon III_

Eli Vernon III, TDCJ-CID #1863499
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583

-11-

## VERIFICATION

I, Eli Vernon III, Applicant, pro-se in the above styled and numbered cause, being presently incarcerated at the Alfred Stringfellow Unit, of the TDCJ-CID, in Brazoria County, Texas, do hereby verify under penalty of perjury that all the statements contained in this Objections To Trial Courts Order Recommending that Applicant's Application for writ Of Habeas Corpus be Denied are true and correct. Affirmation made pursuant to 28 U.S.C. § 1746.

_Eli Vernon III_       / 5 JUL 15
Eli Vernon III, TDCJ-CID #1863499
Applicant, Pro-Se

## CERTIFICATE OF SERVICE

I, Eli Vernon III, Applicant, pro-se, do hereby certify that a true and correct copy of this Objections to Trial Judge's Order Recommending That Applicant's Application for writ of Habeas Corpus Be Denied has been served by placing a copy of the same in the U.S. mail, first class mail, postage prepaid, addressed to:

Parker Coutny District Attorney
ATTN: Mr. Edward D. Lewalled, Asst. D.A.
117 Fort Worth Hwy.
Weatherford, Texas
76086

_Eli Vernon III_    / 5 JUL 15
Eli Vernon III, TDCJ-CID #1863499
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583